# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |  |
|---|---|---|
| INVICTUS GLOBE, LLC, a Georgia Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.: |
| v. | ) ) | _____ |
| CJ LOGISTICS HOLDINGS AMERICA CORPORATION, formerly known as CJ LOGISTICS U.S.A. CORPORATION, | ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

Invictus Globe, LLC ("Invictus"), by and through its undersigned counsel, hereby files this Complaint for Damages against CJ Logistics Holdings America Corporation, formerly known as CJ Logistics U.S.A. Corporation ("CJ Logistics") respectfully showing this Court as follows:

## INTRODUCTION

This is a simple breach of contract action. Yet, this case marks the second time Invictus has been forced into Court to protect itself and its rights against CJ Logistics' conduct. Invictus and CJ Logistics are parties to a certain Independent Contractor Agreement, including various amendments and Appendixes. Pursuant to

1

the terms of that agreement, Invictus was to be paid certain sums by CJ Logistics including, but not limited to: (i) commissions for drayage services; and, (ii) commissions for warehouse management services. A subsidiary of Invictus was also appointed as paying agent pursuant to the terms of the agreement.

The parties operated under this agreement for over two years before CJ Logistics halted commissions payments. That breach resulted in prior litigation between Invictus and CJ Logistics which was resolved and said litigation dismissed. Invictus and CJ Logistics then continued operating under the agreement, including as further amended by/through the parties' agreement to resolve the prior litigation, for nearly six months.

However, in November, 2021, CJ Logistics ceased making the payments that were due and owing to Invictus, concocted and asserted a baseless claim of unilateral termination of the agreement, and has refused to pay the commissions and other sums owed to Invictus since that time, despite Invictus' requests for payment and honor of the agreement. CJ Logistics' conduct, including its refusal to pay to Invictus the sums owed (and CJ Logistics' purported declaration of unilateral termination of the agreement) constitutes breach of contract and entitles Invictus to an award of damages.

## PARTIES

1.

Invictus is a Georgia Limited Liability Company with its principal place of business located at 1325 Satellite Blvd. NW, Ste. 1204, Suwanee, Gwinnett County, Georgia 30024. The sole member of Invictus is Alex Choi who is a citizen of the State of Georgia.

2.

CJ Logistics is a corporation organized under the laws of the State of New York with its principal place of business located at 1760 South Wolf Road, Des Plaines, Illinois, 60018 and is thus a citizen of the State of Illinois. CJ Logistics is registered with the Georgia Secretary of State and authorized to transact business in Georgia, and as set forth in paragraph four (4) of this Complaint, conducts and transacts business in Georgia.  A true and correct copy of CJ Logistics' authorization to transact business in Georgia is attached hereto and incorporated herein as **Exhibit "1"**.  As set forth in **Exhibit "1"**, CJ Logistics was formerly known as CJ Logistics U.S.A. Corporation, and such change in name is shown by **Exhibit "1"** and incorporated herein by reference.  CJ Logistics may be served with process in this district by serving its Registered Agent, Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

3.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

4.

CJ Logistics advertises, solicit clients, and conducts continuous, systemic, and routine business in the state of Georgia and within this district, subjecting them to personal jurisdiction in this district. Specifically, and without limitation, CJ Logistics owns, and/or leases, and/or operates property located at 3051 Kumho Parkway, Macon, Georgia 31216; owns, and/or leases, and/or operates property located at 580 Joe Tamplin Industrial Blvd., Suite 200, Macon, Georgia 31217; owns, and/or leases, and/or operates property at 1240 Highway 155 South, McDonough, Georgia 30253; and owns, and/or leases, and/or operates property in or around Dalton, Georgia.  Upon information and belief, these properties (and potentially others) are operated, staffed, and maintained by CJ Logistics and demonstrate purposeful availment of the benefits of operating in the State of Georgia and this district.

5.

CJ Logistics is subject to personal jurisdiction in this district because CJ Logistics: (a) transacts business within the State of Georgia and this district; and, (b) owns, uses, and/or possesses real property situated within the State of Georgia and this district.

6.

Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1), (c) and (d) because Invictus is headquartered in this district and suffered damage here. CJ Logistics regularly engages in business in this judicial district, has registered agents here, and its contacts are sufficient to subject it to personal jurisdiction here.

**Background of the Agreement**

7.

On or about February 21, 2018 Invictus and CJ Logistics entered into a certain Independent Contractor Agreement, including Appendixes A and B, regarding certain commissions to be paid to Invictus.

8.

Invictus and CJ Logistics amended that Independent Contractor Agreement on or about May 1, 2018 by executing that certain First Amendment to Independent

Contractor Agreement ("First Amendment") in order to amend and modify Appendix B of the Independent Contractor Agreement.

9.

On August 24, 2018, Invictus and CJ Logistics amended that Independent Contractor Agreement by executing that certain Amendment to Appendix A of Independent Contractor Agreement ("Appendix A Amendment"). Appendix A was further amended by an indisputable oral modification.

10.

On September 30, 2018, Invictus and CJ Logistics entered that certain Second Amendment to Independent Contractor Agreement adding Appendix C to the Independent Contractor Agreement (Second Amendment).

11.

Invictus and CJ Logistics further amended the Independent Contractor Agreement on December 14, 2018 by way of that certain Third Amendment to Independent Contractor Agreement that amended the existing Appendix B and added Appendix D to the Independent Contractor Agreement ("Third Amendment").

12.

On May 21, 2021, Invictus and CJ Logistics entered that certain Second Amendment to Appendix A of Independent Contractor Agreement further amending

6

Appendix A ("Second Appendix A Amendment"). The Independent Contractor Agreement, amended as set forth in paragraphs 8 through 12 of this Complaint, and including Appendixes A through D, is referred to hereinafter as the "Agreement").

13.

The Agreement is identified hereto as **Exhibit "2"** because the Agreement itself is deemed "Confidential Information" A complete version of the Agreement is being filed separately under seal with this Complaint.

## **The Original Dispute**

14.

Pursuant to the Agreement, Invictus was to be paid certain sums related to CNT (drayage) services obtained and/or performed by CJ Logistics.

15.

Despite having abided by the Agreement for more than two years, in April, 2020, CJ Logistics ceased making the CNT (drayage) commissions payments to Invictus in the correct amount, and began unilaterally deducting sums from said payments.

16.

Invictus instituted a civil action in this District seeking, amongst other things, recovery against CJ Logistics for breach of contract ("First Lawsuit").[1]

17.

Invictus and CJ Logistics agreed to settle the First Lawsuit and filed a Notice of Settlement in the United States District Court for the Northern District of Georgia on May 20, 2021, a true and correct copy of which is attached hereto as **Exhibit "3"** and incorporated herein by reference.

18.

Upon consummation and performance of the formal Settlement Agreement referenced in the Notice of Settlement, the parties jointly stipulated to dismissal of the First Lawsuit on June 10, 2021.

---

[1] The First Lawsuit was commenced in the State Court of Gwinnett County, Georgia on September 28, 2020 and known as *Invictus Globe, LLC v. CJ Logistics Holdings America* Corporation, State Court of Gwinnett County, Civil Action File No. 20-C-06520-S1. CJ Logistics subsequently removed the First Lawsuit to the United States District Court for the Northern District of Georgia, Atlanta Division, where it was known as *Invictus Globe, LLC v. CJ Logistics Holdings America* Corporation, United States District Court for the Northern District of Georgia, Civil Action File No. 1:20-cv-04412-TCB.

**The Parties Resume Performance**

19.

The Parties then resumed performance under the Agreement, including as modified by the Second Appendix A Amendment executed on May 21, 2021, and acted in accordance therewith for nearly six (6) months.

**The Concocted Termination**

20.

On or about November 9, 2021, CJ Logistics purported to terminate the Agreement via a letter sent to Invictus by CJ Logistics' General Counsel, Maria Motov (the "Purported Termination").

21.

The Purported Termination, while light on colorable facts (because no such facts supporting termination exist), asserted that CJ Logistics was terminating the Agreement pursuant to Section 3.2 of the Independent Contractor Agreement.

22.

Section 3.2(1) of the Independent Contractor Agreement authorized termination of the Independent Contractor Agreement by CJ Logistics **only** if: (a) Invictus breaches Article 4 or Article 5; or, (b) Invictus materially breaches any other provision of the Independent Contractor Agreement. However, in **either** event,

Invictus was entitled to notice of such alleged breach and a period of fifteen days to cure any such alleged breach prior to termination.

23.

In CJ Logistics' haste to concoct grounds to avoid its contractual obligations to Invictus, the Purported Termination misstated (and misapprehended) the provisions of Section 3.2(1) of the Independent Contractor Agreement in an effort to make it favorable to CJ Logistics. In doing so, CJ Logistics sought to remove the notice and right-to-cure rights vested in Invictus, to deprive Invictus of such rights, and to make the Purported Termination effective immediately.   This alone constitutes breach of contract.

**Falsity of the Claimed Grounds for the Purported Termination**

24.

CJ Logistics also simply concocted the grounds upon which it (falsely) claimed a right of termination of the Independent Contractor Agreement and the Agreement.

25.

Invictus did not commit any of the breaches alleged by CJ Logistics in the Purported Termination.

26.

Invictus did not bid against CJ Logistics as alleged in the Purported Termination; however, even if Invictus had done so, quite literally nothing in the Agreement restricts Invictus from soliciting business from Shipping Customer.

27.

Invictus did not violate Section 5.2 of the Independent Contractor Agreement. Invictus's retention of a former employee of CJ Logistics, Lisa Kim (now known as Lisa Shin, and but hereafter "Ms. Kim"), was done with the express consent and approval of CJ Logistics and its then-CEO, Mr. Y.H. Lee.

28.

CJ Logistics' knowledge, consent to, and ratification of Ms. Kim's employment with Invictus is shown by the fact that Ms. Kim communicated on behalf of Invictus with CJ Logistics on a frequent, often weekly, basis.  CJ Logistics therefore consented to such employment and waived any claim that such employment constituted a violation of the Agreement.

29.

Moreover, all of the facts pertaining to Ms. Kim's employment with Invictus existed and were known to CJ Logistics at the time CJ Logistics answered the First Lawsuit. CJ Logistics recognized then that Ms. Kim's employment was not a breach

11

of the Agreement, and so CJ Logistics never made or advanced any counterclaim against Invictus pertaining to Ms. Kim's employment or alleging that it constituted a breach of the Agreement, even though such counterclaim would have been compulsory.

30.

The result of CJ Logistics' failure to plead a compulsory counterclaim is waiver of the claim, and thus, even if CJ Logistics had not ratified and approved Ms. Kim's employment with Invictus (which it did), CJ Logistics indisputably waived and relinquished that claimed breach long ago.

31.

CJ Logistics other proffered reasons for the Purported Termination (an amorphous and false claim of fraud, and a claim of trademark infringement) also fail and do not constitute or substantiate any right of CJ Logistics to terminate the Agreement.

32.

As a result, on or about November 19, 2021, Invictus' corporate counsel sent a response letter addressing the inaccuracies within the Purported Termination, and rejecting CJ Logistics' efforts aimed at termination.

33.

Nonetheless, despite repeated requests from Invictus that CJ Logistics honor the Agreement, perform as required by the Agreement, and tender to Invictus the sums due thereunder, CJ Logistics has refused.

34.

However, contrary to its claim to have terminated the Agreement as set forth in the Purported Termination, CJ Logistics continued to utilize the services and work of Invictus governed by the Amendment to Appendix A in the Agreement for six (6) months, more or less, after the Purported Termination.

35.

The result is that CJ Logistics has continued to utilize and enjoy the services provided by Invictus, including those services provided by Invictus and its subsidiary under Amendment to Appendix A in the Agreement, but have refused to tender and deliver to Invictus the sums due to Invictus for such work (and as otherwise due under the Agreement).

## CJ Logistics Desire to Avoid the Burdens of Its Bargain

36.

In reality, the Purported Termination is a thinly veiled effort by CJ Logistics to avoid paying certain sums which either are presently due, or will shortly become due, to Invictus.

37.

For example, one Appendix to the Agreement provides for a fixed commission payment due and payable by CJ Logistics to Invictus upon the occurrence of a specific event (the "Triggering Event"). This seven figure sum is due upon occurrence of the Triggering Event and payable in a lump sum.

38.

CJ Logistics efforts, through the Purported Termination, to "terminate" the Agreement (while still enjoying Invictus's performance under the Agreement) is quite evidently aimed at avoiding paying this sum upon the occurrence of the Triggering Event, which may have already occurred or will shortly occur.

39.

Invictus has tried to amicably resolve this dispute thorough multiple efforts as required by the Agreement, but has been rebuffed by CJ Logistics, leaving Invictus no alternative but to file suit.

## COUNT I – BREACH OF CONTRACT

40.

Invictus hereby incorporates and realleges paragraphs one (1) through thirty-nine (39) of this Complaint as if set forth fully herein.

41.

The Agreement is a valid, lawful, and enforceable contract between Invictus and CJ Logistics.

42.

CJ Logistics induced Invictus to agree to an oral modification of the Agreement, which CJ Logistics and Invictus ratified by a course of dealing of more than two years.

43.

As recently as May, 2021, Invictus and CJ Logistics amended the Agreement, and continued to perform thereunder for nearly six months before CJ Logistics' unilateral breach of the Agreement.

44.

CJ Logistics' conduct including, but not limited to, unauthorizedly ceasing payments due to Invictus under the Agreement, attempting to unilaterally terminate the Agreement without cause and in contravention of the Agreement, and enjoying

15

Invictus's provision of services (even until today) without payment for such services constitutes breach of contract.

45.

CJ Logistics' refusal to pay Invictus the sums due under the Agreement constitutes breach of contract.

46.

CJ Logistics' refusal to allow Invictus access to its accounting books and records in violation of its "open book keeping" agreement constitutes breach of contract.

47.

CJ Logistics' breach of the Agreement, entitles Invictus to damages in an amount not less than **$783,490.68** which is currently due and payable to Invictus.

48.

Invictus is also entitled to an award of damages, in the form of payment of the lump sum commission specified in the Agreement, upon occurrence of the Triggering Event which has already occurred or will occur shortly.

## COUNT II – BREACH OF COVENANT OF
## GOOD FAITH AND FAIR DEALING

49.

Invictus hereby incorporates and realleges paragraphs one (1) through forty-eight (48) of this Complaint as if set forth fully herein.

50.

The Agreement includes an implied promise of good faith and fair dealing.

51.

Under California law[2], the implied promise of good faith and fair dealing means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

52.

The Agreement is a valid and enforceable contract.

53.

Invictus is doing (or has already done) all (or substantially all) of the material things that the Agreement requires Invictus to do. Invictus has not done (and is not doing) anything in contravention of the Agreement.

---

[2] Pursuant to the Agreement, California law governs the Agreement.

54.

All conditions required to entitle Invictus to receive the payments due from CJ Logistics have occurred, or will occur but for the breach of the Agreement by CJ Logistics.

55.

CJ Logistics has unfairly interfered with Invictus' right to receive the commission payments and other payments due under the Agreement.

56.

Invictus has been harmed by CJ Logistics conduct in breaching the covenant of good faith and fair dealing, and is entitled to damages in an amount to be proven as a result of CJ Logistics' conduct.

## COUNT III – ATTORNEYS' FEES

57.

Invictus hereby incorporates and realleges paragraphs one (1) through fifty-six (56) of this Complaint as if set forth fully herein.

58.

CJ Logistics has refused to tender to Invictus the sums which are due under the Agreement.

59.

CJ Logistics' positions and assertions, including as set forth in the Purported Termination, are so contrary to all facts and law that they evidence CJ Logistics' exercise of bad faith, stubborn litigiousness, and intent to cause Invictus unnecessary trouble and expense.

60.

CJ Logistics' conduct entitles Invictus to an award of attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Invictus respectfully requests that this Court:

1. Cause process to issue to CJ Logistics; and,

2. Enter judgment in favor of Invictus and against CJ Logistics in an amount not less than **$783,490.68** , representing the sums due to Invictus under the Agreement; and,

3. Enter judgment in favor of Invictus and against CJ Logistics in an amount not less than lump sum commission specified in the Agreement payable upon occurrence of the Triggering Event, representing additional sums due to Invictus under the Agreement; and,

4. Enter judgment in favor of Invictus and against CJ Logistics in an amount to be proven representing Invictus's damages incurred due to CJ Logistics breach of the duty of good faith and fair dealing; and,

5. Enter an award of attorney's fees and expenses of litigation in favor of Invictus (and against CJ Logistics pursuant to O.C.G.A. §13-6-11);

6. Interest as allowed by law; and

7. Grant it such other and further relief as the Court deems just and proper.

/s John A. Christy
JOHN A. CHRISTY
Georgia Bar No. 125518
*Attorney for Plaintiff*

SCHREEDER, WHEELER & FLINT, LLP
1100 Peachtree Street, NE, Suite 800
Atlanta, Georgia 30309
Telephone:  (404) 681-3450
Facsimile:   (404) 681-1046
Email:         jchristy@swfllp.com

/s Andrew D. Stancil
ANDREW D. STANCIL
Georgia Bar No. 557272
BRIAN T. EASLEY
Georgia Bar No. 425824
*Attorneys for Plaintiff*

MAHAFFEY PICKENS TUCKER, LLP
1550 North Brown Road, Suite 125
Lawrenceville, Georgia 30043
Telephone:  (770) 232-0000
Facsimile:   (678) 518-6880
Email:         astancil@mptlawfirm.com
                   beasley@mptlawfirm.com

EXHIBIT "1"

Control Number : 09044992

# STATE OF GEORGIA

## Secretary of State

**Corporations Division**
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

## AMENDED CERTIFICATE OF AUTHORITY
### NAME CHANGE

I, **Brad Raffensperger**, the Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

### CJ LOGISTICS U.S.A. CORPORATION
#### a Foreign Profit Corporation

formed under the laws of the State of **New York** and authorized to transact business in Georgia on **05/29/2009**, has amended its application to transact business in this state by the filing of an amendment changing its name to

### CJ LOGISTICS HOLDINGS AMERICA CORPORATION
#### a Foreign Profit Corporation

and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated. Attached hereto is a true and correct copy of said application.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on **03/03/2020**.



*Brad Raffensperger*

Brad Raffensperger
Secretary of State



Secretary of State

**OFFICE OF SECRETARY OF STATE**
CORPORATIONS DIVISION
2 Martin Luther King Jr. Dr. SE
Suite 313 West Tower
Atlanta, GA 30334
(404) 656-2817
sos.georgia.gov/corporations

2020 FEB 20  PH 4: 23

## APPLICATION FOR AMENDED CERTIFICATE
## OF AUTHORITY OF A FOREIGN ENTITY

An amended certificate of authority is obtained by filing an application for amended certificate of authority if a foreign entity changes its name or its jurisdiction of organization. If any other information required in the original application has changed, please use this form, attaching additional pages if necessary, to inform the Secretary of State of said changes. Complete (where applicable) and return this form with a check or money order payable to "Secretary of State" in the amount of $30.00 ($20.00 filing fee plus $10 paper filing service charge).

1. **Entity Name:** CJ LOGISTICS U.S.A. CORPORATION

2. **Entity Control Number:** 09044992

3. **Entity Type** (check one only):
   - ☒ Corporation (choose one type)  ⦿ Profit   ○ Nonprofit   ○ Professional
     (Corporation must provide certificate of existence from home state with new name, if applicable.)
   - ☐ Limited Liability Company
   - ☐ Limited Partnership/Limited Liability Limited Partnership
   - ☐ Limited Liability Partnership

4. **State/Country of Home Jurisdiction:** New York

5. **Date of Authorization in Georgia:** May 29, 2009

6. **New Entity Type** (if applicable):
   - ☐ Corporation (choose one type)  ○ Profit   ○ Nonprofit   ○ Professional
     (Corporation must provide certificate of existence from home state with new name, if applicable.)
   - ☐ Limited Liability Company
   - ☐ Limited Partnership/Limited Liability Limited Partnership
   - ☐ Limited Liability Partnership

7. **New Name of Entity** (if applicable): CJ LOGISTICS HOLDINGS AMERICA CORPORATION

8. **New Home Jurisdiction** (if applicable): _____

9. **Effective Date:** (Choose one)  ☒ Upon filing   ☐ Delayed effective date and/or time: _____
   (A delayed effective date must be within 90 days of the filing date.)

10. _____                         2/20 / 2020
    Signature                                         Date

    **Print Name*:** Jimyoung Kim

    **Email Address:** william.kim@cj.net

    **Signer's Capacity** (check one only):
    - Corporation:  ☒ Officer  ☐ Chairperson of Board of Directors  ☐ Court-Appointed Fiduciary  ☐ Attorney-in-fact
    - LLC:  ☐ Member  ☐ Manager  ☐ Court-Appointed Fiduciary  ☐ Attorney-in-fact
    - LP/LLLP:  ☐ General Partner  ☐ Attorney-in-fact
    - LLP:  ☐ Authorized Person

\* Enter individual's legal name, i.e. first and last name without use of initials or nicknames. Middle names or initials may be included.

FORM CD 518
(Rev. 10/2019)

# State of New York
# Department of State $\}$ ss:

*I hereby certify, that the Certificate of Incorporation of CJ LOGISTICS HOLDINGS AMERICA CORPORATION was filed on 09/23/1974, under the name of KOREA EXPRESS U. S. A. INC., with perpetual duration, and that a diligent examination has been made of the Corporate index for documents filed with this Department for a certificate, order, or record of a dissolution, and upon such examination, no such certificate, order or record has been found, and that so far as indicated by the records of this Department, such corporation is an existing corporation. I further certify the following:*

*A Certificate of Amendment was filed on 01/26/1983.*

*A Certificate of Amendment was filed on 07/24/1990.*

*A Biennial Statement was filed 09/29/1993.*

*A Biennial Statement was filed 09/19/1996.*

*A Biennial Statement was filed 09/15/2000.*

*A Biennial Statement was filed 09/10/2002.*

*A Biennial Statement was filed 10/21/2004.*

*A Biennial Statement was filed 06/01/2007.*

*A Certificate of Amendment was filed on 08/13/2007.*

*A Certificate of Amendment was filed on 01/11/2008.*

*A Biennial Statement was filed 08/25/2008.*

*A Certificate of Amendment was filed on 08/21/2009.*

*A Biennial Statement was filed 09/24/2010.*

*A Certificate of Amendment was filed on 11/03/2011.*

*A Certificate of Amendment was filed on 07/26/2012.*

*A Biennial Statement was filed 09/11/2012.*

*A Certificate of Merger was filed on 01/30/2014.*

*A certificate changing name to CJ KOREA EXPRESS U.S.A. CORPORATION was filed on 02/19/2014.*

*A Biennial Statement was filed 06/26/2015.*

*A Certificate of Amendment was filed on 10/23/2015.*

*A Certificate of Amendment was filed on 12/30/2015.*

*A Biennial Statement was filed 09/01/2016.*

*A certificate changing name to CJ LOGISTICS U.S.A. CORPORATION was filed on 01/20/2017.*

A Certificate of Amendment was filed on 11/06/2018.

A Biennial Statement was filed 01/18/2019.

A Certificate of Amendment was filed on 08/30/2019.

Restated Certificate was filed on 12/20/2019.

A certificate changing name to CJ LOGISTICS HOLDINGS AMERICA CORPORATION was filed on 01/31/2020.

I further certify that no other documents have been filed by such corporation.



***

Witness my hand and the official seal of the Department of State at the City of Albany, this 13th day of February two thousand and twenty.

Brendan C. Hughes
Executive Deputy Secretary of State

202002140491 * MT

# EXHIBIT "2"

## INDEPENDENT CONTRACTOR AGREEMENT

## FILED UNDER SEAL

EXHIBIT "3"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| INVICTUS GLOBE, LLC, )<br><br>  Plaintiff, )<br><br>v. )<br><br>CJ LOGISTICS HOLDINGS )<br>AMERICA CORPORATION, )<br>formerly known as CJ LOGISTICS )<br>U.S.A. CORPORATION, )<br><br>  Defendant. )<br> ) | **CIVIL ACTION FILE**<br><br>**No. 1:20-cv-04412-TCB** |

## <u>NOTICE OF SETTLEMENT</u>

Plaintiff Invictus Globe, LLC ("Invictus Globe") and Defendant CJ Logistics Holdings America Corporation, formerly known as CJ Logistics U.S.A. Corporation ("CJ Logistics") (collectively, "Parties") by and through their respective counsel of record, respectfully submit to the Court this Notice of Settlement.

The Parties have reached an agreement to settle all matters in the above-referenced litigation and have executed a written Mediated Settlement Memorandum ("Memorandum"). The Parties intend to prepare and execute a formal Settlement Agreement as provided for in the Memorandum, and once the Parties have fulfilled their obligations under the Memorandum and the Settlement Agreement, the Parties will file a Joint Stipulation for Dismissal With Prejudice .

This 20th day of May, 2021.

**MAHAFFEY PICKENS TUCKER, LLP**

*/s/ Andrew D. Stancil*
Andrew D. Stancil
Georgia Bar No. 557272
Brian T. Easley
Georgia Bar No. 425824
1550 North Brown Road, Suite 125
Lawrenceville, Georgia 30043
(770) 232-0000
Email: astancil@mptlawfirm.com
Email: beasley@mptlawfirm.com

*Attorneys for Plaintiff*

**MORRIS, MANNING & MARTIN, LLP**

*/s/ Daniel Huynh*
Daniel Huynh
Ga. Bar No. 987369
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
Tel. (404) 233-7000
Fax (404) 365-9532
Email: dhuynh@mmmlaw.com

**SHEPPARD MULLIN RICHTER &
HAMPTON, LLP**

*/s/ Fred Puglisi*
Fred Puglisi, Counsel Pro Hac Vice
Jay T. Ramsey, Counsel Pro Hac Vice
Nolan Walter, Counsel Pro Hac Vice
1901 Avenue of the Stars
Suite 1600
Los Angeles, CA 90067

(310) 228-3700
Email: fpuglisi@sheppardmullin.com
Email: jramsey@sheppardmullin.com
Email: nwalter@sheppardmullin.com

*Attorneys for Defendant CJ Logistics
Holdings America Corporation*

## STATEMENT OF COMPLIANCE WITH FONT SIZE

I hereby certify that the foregoing has been prepared with 14-Point Times New Roman font, which is one of the font and point selections approved by the Court in LR 5.1C, N.D. Ga.

/s John A. Christy
JOHN A. CHRISTY
Georgia Bar No. 125518
*Attorney for Plaintiff*

SCHREEDER, WHEELER & FLINT, LLP
1100 Peachtree Street, NE, Suite 800
Atlanta, Georgia 30309
Telephone:  (404) 681-3450
Facsimile:  (404) 681-1046
Email:        jchristy@swfllp.com
                 smulherin@swfllp.com